**STATE of Minnesota, Respondent,**

v.

**Antonio WORD, Appellant.**

**No. A07–0907.**

Court of Appeals of Minnesota.

Sept. 16, 2008.

---

Lori Swanson, Attorney General, James B. Early, Assistant Attorney General, St. Paul, MN; and Janelle Kendall, Stearns County Attorney, St. Cloud, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge; MINGE, Judge; and HUSPENI, Judge.*

## OPINION

MINGE, Judge.

Appellant challenges his conviction of violating an order for protection (OFP), claiming that the district court erred or abused its discretion by: denying his motion in limine to bar relationship evidence, not excluding prejudicial relationship evidence at trial, not issuing a cautionary instruction, allowing the state to impeach appellant with two prior controlled-substance convictions, and issuing confusing and misleading jury instructions. Appellant further contends that the cumulative effect of these errors denied him a fair trial. Because we conclude that the district court's handling of the challenged relationship evidence was not reversible plain error, that neither the admission of the prior convictions nor the instructions were improper, and that appellant received a fair trial, we affirm.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## FACTS

Appellant Antonio Word and J.S. began dating in 1998. Although they have a child together, they frequently fought and broke up. On August 1, 2006, an incident occurred in which, according to J.S., Word and his new girlfriend chased J.S. in traffic, and later the new girlfriend beat her as Word yelled instructions. J.S. requested and was granted an OFP. The OFP prohibited Word from having any contact with J.S. or her children in person or by phone. Word was promptly informed of the OFP. However, Word immediately began violating the OFP by calling J.S., following her in traffic, and parking across the street from her home and workplace parking spot. Word was subsequently apprehended and charged with violating Minn. Stat. § 518B.01, subd. 14(a), (d)(1) (2006), which makes it a felony to knowingly violate an OFP within ten years after the first of two or more previous, qualified domestic-violence convictions. Word stipulated to prior qualified convictions of misdemeanor domestic assault and misdemeanor violation of an OFP, conceding that the current offense was properly charged as a felony.

Prior to trial, the district court considered motions in limine regarding the prior relationship between Word and J.S., *Spreigl* evidence, and certain impeachment evidence. The district court observed that it could not assess the probative or prejudicial quality of the relationship evidence because the specifics of that proposed evidence had not been provided. In a general ruling, the district court conditionally allowed limited relationship evidence, cautioning the state against overemphasizing the evidence. The district court reserved ruling on *Spreigl* evidence, allowed impeachment evidence of two prior controlled-substance convictions, and excluded impeachment evidence of convictions of two other controlled-substance offenses and terroristic threats. The jury found Word guilty, and the district court sentenced him to 30 months in prison. This appeal follows.

## ISSUES

I. Did the district court abuse its discretion by denying appellant's motion in limine to exclude prior relationship evidence?

II. Should appellant receive a new trial because the prosecution introduced and the district court did not exclude relationship evidence that is claimed to be excessive and unduly prejudicial?

III. Was the district court's failure to give cautionary instructions to the jury regarding proper use of relationship evidence reversible error?

IV. Did the district court abuse its discretion by allowing the state to impeach appellant with two prior controlled-substance convictions, and was it reversible, plain error not to give a cautionary instruction at the time that evidence was introduced?

V. Did the differences between district court instructions regarding the proper use of appellant's prior OFP violation and the proper use of prior controlled-substance convictions for impeachment purposes constitute error, and were the differences confusing and require a reversal?

VI. Was the cumulative effect of errors in the district court's evidentiary decisions and jury instructions so prejudicial that it impaired appellant's right to a fair trial?

## ANALYSIS

### I.

The first issue is whether the district court erred by denying Word's motion in limine to exclude evidence of his

prior relationship with J.S. "Evidentiary rulings rest within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion." *State v. Amos*, 658 N.W.2d 201, 203 (Minn.2003). On appeal, the appealing party must establish that the district court abused its discretion and that the defendant was thereby prejudiced. *See id.* Evidence of similar conduct by a defendant against the victim of domestic abuse is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice. Minn.Stat. § 634.20 (2006). As our supreme court has noted, this statute removes evidence of similar prior conduct in domestic-abuse prosecutions from the clear and convincing standard of Minn. R. Evid. 404(b). *State v. Cross*, 577 N.W.2d 721, 726 n. 2 (Minn.1998). Our supreme court has "on numerous occasions recognized the inherent [probative] value of evidence of past acts of violence committed by the same defendant against the same victim." *State v. Waino*, 611 N.W.2d 575, 579 (Minn.App.2000) (alteration in original) (citing *State v. Williams*, 593 N.W.2d 227, 236 (Minn.1999)).

Word contends that the district court abused its discretion because it denied his pretrial motion to exclude relationship evidence without knowing exactly the sort of evidence that the state planned to introduce at trial. Rather than allowing or denying specific relationship evidence, the district court ruled that "a limited amount of relationship evidence will be admitted." The district court included a memorandum as part of the order. That memorandum amplified the order as follows:

> Unfairly prejudicial evidence is evidence that persuades by illegitimate means, giving one party an unfair advantage. It is difficult to assess the probative value and the danger of unfair prejudice of this evidence when no details of what the evidence consists of has

been submitted. That said, the Court will allow relationship evidence to the extent it highlights the nature of the relationship, its history and the circumstances on the day of the offense. The Court cautions the State that placing too much emphasis on this evidence will easily lead to unfair prejudice and urges the State to concentrate its efforts on the current violation.

The district court's order (with memorandum) was reasonable and balanced. It gave both sides notice that, although relationship evidence would be admitted, there were limits. Given the lack of specificity in the offer of proof provided to the district court at the time it considered the motion in limine and the specific statutory authorization to admit such evidence, we conclude that the district court did not abuse its discretion by entering its order and refusing to prohibit such evidence outright.

## II.

The second issue is whether Word should receive a new trial because the prosecution introduced, and the district court did not exclude, excessive and unduly prejudicial relationship evidence.

### A. The Standard of Review

At the outset, we must determine our scope of review. This depends on whether Word objected to the introduction of the evidence at trial. "Absent an objection at district court, an appellate court may only review for 'plain error.'" *State v. Meldrum*, 724 N.W.2d 15, 19–20 (Minn. App.2006) (citations omitted), *review denied* (Minn. Jan. 24, 2007). An unobjected-to error will be corrected only upon a finding of the following: (1) error; (2) that is plain; and (3) that affects the defendant's substantial rights. *Id.* at 20 (citing

*State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998)). The defendant bears a heavy burden of persuasion on the third prong, which is satisfied if the defendant shows that the error was prejudicial and affected the outcome of the case. *Griller,* 583 N.W.2d at 741. Plain error is prejudicial if there is a reasonable likelihood that the error had a significant effect on the verdict of the jury. *Id.* If all three elements are met, we will only reverse if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Johnson v. United States,* 520 U.S. 461, 467, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997).

The plain-error standard is more difficult for an appellant to meet than the standard for objected-to error. *See, e.g., State v. Swanson,* 707 N.W.2d 645, 658 (Minn.2006) (noting that once objected-to prosecutorial misconduct has been established, a defendant will be granted a new trial unless the misconduct was harmless beyond a reasonable doubt, which will only be found if the verdict was surely unattributable to the trial error); *see also State v. Ramey,* 721 N.W.2d 294, 298–99 (Minn. 2006) (discussing the plain-error standard, and determining that its use should encourage objection at trial).

Here, Word objected to the relationship evidence at the outset of the proceeding by filing a motion in limine. However, after the district court's limited pretrial ruling on that motion, Word raised no objection at trial and now argues that it was unnecessary to renew his objection to the introduction of relationship evidence. The state responds that, if Word perceived that the prosecution was introducing relationship evidence that violated the limited pretrial ruling, Word had an obligation to raise an objection at trial in order to preserve this issue for appeal.

The relevant rule of evidence provides that "[o]nce the court makes a *definitive* ruling on the record admitting ... evidence, either at or before trial, a party need not renew an objection ... to preserve a claim of error." Minn. R. Evid. 103(a) (emphasis added). This language mirrors Federal Rule of Evidence 103 and codified existing practice in Minnesota, which provided that a motion in limine to strike or prohibit the introduction of evidence operated as a timely objection and obviated the requirement for any further objection with respect to the challenged evidence. Minn. R. Evid. 103(a) 2006 advisory comm. cmt. (citing Minn. R. Evid. 103(a) 1989 comm. cmt.). The comments state that

> [t]he amendment does not prevent an attorney from ... renewing an objection. Repetitive, cumulative objections should be avoided, but occasionally the context at trial is more developed and may be different from what was anticipated at the time of the former ruling, justifying a renewed objection and perhaps a different ruling.

*Id.*

The advisory-committee note accompanying revised Fed.R.Evid. 103 states that "[o]ne of the most difficult questions arising from in limine ... rulings is whether a losing party must renew an objection ... when the evidence is ... offered at trial, in order to preserve a claim of error on appeal." Fed.R.Evid. 103 2000 advisory comm. note. Federal cases illustrate application of the rule. *See Rosenfeld v. Basquiat,* 78 F.3d 84, 90 (2d Cir.1996) (stating that a motion in limine preserves a claim of error on appeal when the issue is one that (1) is fairly presented to the district court; (2) may be finally decided before trial; and (3) is the subject of a *definite* ruling by the district court); *Fusco v. Gen. Motors Corp.,* 11 F.3d 259, 262–

63 (1st Cir.1993) (distinguishing between objections to evidence, which must be renewed at trial, and offers of proof, which need not be renewed after a *definitive* determination that the evidence is inadmissible). The advisory-committee note to Fed.R.Evid. 103 states that, when a district court appears to have reserved its ruling or to have indicated that the ruling is provisional, it makes sense to require the party to bring the issue to the court's attention subsequently. Fed.R.Evid. 103 2000 advisory comm. note (citing *United States v. Vest,* 116 F.3d 1179, 1188 (7th Cir.1997)). Moreover, attorneys have an obligation to seek clarification regarding whether an in limine ruling is definitive when there is doubt on that point. *See id.*

■■■ Based on the language of Minn. R. Evid. 103(a), comments accompanying Fed.R.Evid. 103, and federal decisions, we conclude that evidentiary objections should be renewed at trial when an in limine or other evidentiary ruling is not definitive but rather provisional or unclear, or when the context at trial differs materially from that at the time of the former ruling. Common sense also dictates that, when an attorney is unsure whether evidence offered at trial violates an evidentiary ruling, the attorney should renew an objection or seek clarification or reversal of a prior ruling.

Here, the district court did not issue a "definitive ruling." The district court issued a qualified ruling that incorporated the statutory limits on the scope of the relationship evidence. We conclude that Word had the burden to renew an objection if he believed that the state was introducing relationship evidence in violation of the district court's limited pretrial ruling. Accordingly, we consider Word's contention that he was deprived of a fair trial because the prosecution introduced excessive and unduly prejudicial relationship ev-

idence using the plain-error standard. *See Griller,* 583 N.W.2d at 740.

*B. Application of Plain–Error Standard*

■■■ Word argues that the probative value of the relationship evidence introduced at trial was outweighed by its prejudicial impact and that the district court should have taken the initiative to exclude the evidence. "The term 'relationship evidence' has been used to describe any evidence that is offered to illuminate the relationship between the accused and the alleged victim." *State v. Bell,* 719 N.W.2d 635, 638 n. 4 (Minn.2006). Minn. R. Evid. 404(b), otherwise known as the *Spreigl* rule, states that "[e]vidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." *See also State v. Spreigl,* 272 Minn. 488, 139 N.W.2d 167 (1965). By contrast, Minn.Stat. § 634.20 provides the following:

> Evidence of similar conduct by the accused against the victim of domestic abuse, or against other family or household members, is admissible unless the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. "Similar conduct" includes ... evidence of domestic abuse, violation of an order for protection under section 518B.01, or violation of a harassment restraining order under section 609.748....

Because Word and J.S. have a child in common, section 634.20 applies here. Minn.Stat. § 518B.01, subd. 2(b)(5) (2006).

■■■ In *State v. McCoy,* 682 N.W.2d 153, 159–61 (Minn.2004), the Minnesota Supreme Court concluded that evidence of

similar conduct by the accused against the victim of domestic abuse that is offered under section 634.20 is not to be treated the same as *Spreigl* or other-acts evidence offered pursuant to rule 404(b). The supreme court found that, unlike *Spreigl* evidence, section 634.20 evidence is not offered to demonstrate motive, opportunity, intent, or modus operandi. *McCoy*, 682 N.W.2d at 159. Rather, this evidence is offered to demonstrate the history of the relationship between the accused and the victim of domestic abuse. *Id.* Furthermore, the stringent procedural requirements of rule 404(b) do not apply to section 634.20 evidence. *Bell*, 719 N.W.2d at 638–39. The state is not required to provide notice of the evidence or to prove it by clear and convincing evidence. *McCoy*, 682 N.W.2d at 159–61. Moreover, when considering admissibility, the district court is not required to independently consider the state's need for such evidence as "the need for section 634.20 evidence is naturally considered as part of the assessment of the probative value versus prejudicial effect of the evidence." *Bell*, 719 N.W.2d at 639. Although evidence admitted under section 634.20 and evidence admitted under rule 404(b) share many similarities, the statute allows much more latitude than the rule in admitting relationship evidence.

Here, the state offered extensive evidence of the troubled, long-term relationship between Word and J.S. Most of J.S.'s testimony provided a general picture of Word's controlling nature, abuse, and violence toward her over the course of the relationship. J.S. also testified that Word previously violated an OFP on October 31, 2006, calling her frequently and stating, "A piece of paper ain't gonna stop me, I'll get out." Moreover, she described in detail a harrowing incident that occurred after she refused to have sex with Word on July 15, 2005. J.S.'s testimony was dramatic and prejudicial to Word. Assuming its admis-sion was error, the question is whether it was plain error for the district court not to take the initiative to limit J.S.'s testimony related to the July 15 incident or exclude evidence of the previous OFP violation.

Word attempted to discredit J.S. and provide an alibi. In an apparent defensive move, J.S. admitted during direct examination that she had lied under oath during a previous prosecution of Word. J.S.'s testimony indicated that she lied because she was afraid of Word. Word's defense counsel used this admission to attack J.S.'s credibility throughout the trial. The relationship evidence provides context for this perjury problem. It shows why J.S., in her own words, "would have rather [lied] and gone to jail than to deal with [Word]" after testifying against him. J.S. also had trouble recalling the exact day that Word violated the OFP, as well as exact times and locations for Word's conduct on that day. The relationship evidence demonstrated that this uncertainty could be caused by the numerous and repeated incidents of abusive conduct. In addition, Word's girlfriend provided him with an alibi. The relationship evidence weakens the plausibility of the alibi. Finally, Word testified in his own defense. The relationship evidence essentially impeached Word's credibility.

We determine that even if the district court erred by failing to exclude the full range of the relationship evidence, such a failure was not a clear violation of section 634.20 because the evidence had substantial probative value which was not clearly outweighed by the danger of unfair prejudice. Accordingly, we conclude that the district court did not plainly err by not taking the initiative to exclude the relationship evidence at trial. Furthermore, we observe that the state's case, based on the testimony of J.S., was strong and that Word's defense was not persuasive.

Based on this record, we further conclude that, even if the district court's inaction was plain error, that error did not have a significant effect on the jury's verdict and that such error did not seriously affect the fairness or integrity of the judicial proceeding.

### III.

■ The third issue is whether the failure of the district court to give a cautionary instruction related to the proper use of relationship evidence was reversible error. Because Word did not request or object to the lack of a cautionary instruction on the proper use of relationship evidence, we review the district court's failure to issue an instruction using the plain-error standard previously discussed. *See Meldrum,* 724 N.W.2d at 19–20.

Less than one month after the conclusion of Word's trial, this court issued its opinion in *Meldrum.* We stated that "[u]pon admittance of relationship evidence, even in the absence of a request from counsel, the district court should provide a cautionary instruction when the evidence is admitted, and again during its final charge to the jury." *Id.* at 21. We noted that "[r]elationship evidence and *Spreigl* evidence are analogous. The danger both present is so significant that the precaution of providing a limiting instruction, as in *Spreigl,* should be applied to relationship evidence." *Id.* However, we stated that failure to supply limiting instructions to the jury "does not *automatically* constitute plain error," particularly when other evidence shows that the probative value of the other-bad-acts evidence is not outweighed by its potential for unfair prejudice. *Id.* at 22. "This court must look at the entire record to determine if

there is a significant likelihood that the jury misused the evidence, resulting in the evidence improperly affecting the verdict." *Id.* at 21–22 (citing *State v. Frisinger,* 484 N.W.2d 27, 31 (Minn.1992)).

■ In light of our decision in *Meldrum,* the district court should have issued cautionary instructions related to the proper use of relationship evidence, and the failure to do so represented error that was plain.[1] We also recognize that, because the relationship evidence was dramatic, it created a substantial risk that the jury could misuse the relationship evidence in the absence of an instruction. However, we conclude that, on this record, the lack of an instruction was not prejudicial and did not affect Word's substantial rights.

Although the district court did not issue a cautionary instruction on the proper use of relationship evidence—likely because this court's decision in *Meldrum* was issued following Word's trial—the district court did provide a comprehensive set of instructions that warned the jury, in part, not to convict Word for his prior OFP violation. In relevant part, the instructions were that "[Word] is not being tried for and may not be convicted of any other offense other than the charged offense. You are not to convict [Word] on the basis of any occurrence on October 31, 2005.... To do so might result in unjust, double punishment." Thus, even though the district court did not instruct directly on the proper use of relationship evidence, the jury was aware that it could not use Word's past actions to convict him of an OFP violation allegedly occurring on August 8, 2006. This limited any potential prejudice to Word caused by the district

---

1. We note that *Meldrum* was not decided until after the conclusion of Word's trial. However, the second prong of the plain-error analy- sis is satisfied if the error is plain at the time of appeal. *Griller,* 583 N.W.2d at 741.

court's failure to issue the cautionary instructions.

Moreover, in *Meldrum,* we noted that the prosecutor did not suggest to the jury that it should improperly use the relationship evidence against the defendant. 724 N.W.2d at 22. Likewise, in the present case, the record does not reveal an attempt by the prosecutor to convince the jury to use the relationship evidence for an improper purpose.

Finally, we note that the evidence of Word's guilt was strong. J.S. testified that as soon as she obtained the OFP on August 1, 2006, Word started calling her day and night and visiting her workplace. J.S. also saw Word in traffic "[p]retty much everyday" on her way to work or dropping her children off at daycare. J.S. testified that she woke up on August 8 to Word repeatedly calling her from a pay phone, that she answered and told him to leave her alone, and that the calls ended ten minutes before she left for work. She further testified that when she walked outside, she saw Word's vehicle, saw it again in traffic on her way to work, and saw it parked across the street from her parking spot when she arrived at work. Rather than stopping, J.S. kept going, and as she passed Word, "[h]e kept screaming, 'I love you, J[ ].'"

Given all of the above, we conclude that, although the lack of a cautionary instruction on the proper use of relationship evidence was plain error, on this record, Word failed to carry his burden of showing that the error affected his substantial rights.

## IV.

■ The fourth issue is whether the district court abused its discretion by allowing the state to impeach Word with two prior controlled-substance convictions without giving a cautionary instruction at the time the evidence was introduced.

### A. Admission of Impeachment Evidence

■ Evidence that a witness has been convicted of a crime punishable by imprisonment of more than one year may be admitted for impeachment purposes if the district court determines that the probative value of the evidence outweighs its prejudicial effect. Minn. R. Evid. 609(a). In considering whether the probative value of evidence outweighs its prejudicial effect, a district court must consider:

> (1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime with the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*State v. Jones,* 271 N.W.2d 534, 537–38 (Minn.1978) (quotation omitted). Controlled-substance crimes are not considered crimes of dishonesty. *State v. Norregaard,* 380 N.W.2d 549, 554 (Minn.App. 1986), *aff'd as modified,* 384 N.W.2d 449 (Minn.1986). Minnesota courts have allowed impeachment by prior crimes, whether they are crimes of dishonesty or not, to enable the jury to see the whole person when judging the truth of a witness's testimony. *State v. Brouillette,* 286 N.W.2d 702, 707 (Minn.1979). This court will affirm a district court's ruling on the admissibility of prior convictions for impeachment purposes absent a clear abuse of discretion. *Swanson,* 707 N.W.2d at 654.

Prior to trial, the district court denied most of the state's proposed impeachment-by-prior-offense evidence after weighing

the *Jones* factors, but ruled that two of Word's controlled-substance convictions would be admissible. At trial, Word's own counsel elicited testimony from his client regarding the two convictions in order to lessen the impact of the evidence. The state did not revisit the evidence on cross-examination. On appeal, Word concedes that many of the *Jones* factors weighed in favor of admission, but not the first: Word argues that the impeachment value of the prior crimes was "zero" and that the prejudicial effect of the convictions outweighed their probative value given all of the other evidence of Word's prior bad acts.

Word's credibility was an important factor in this trial. Although the prior convictions were for drug offenses, they were not without value for purposes of impeachment. They helped show the whole person. Moreover, any prejudicial effect was minimized because Word's counsel took the sting out of the convictions during direct examination, the state did not revisit the matter on cross, and the district court issued a limiting instruction at the end of trial. On this record, we conclude that admission of this impeachment evidence is not an abuse of discretion.

### B. Mid–Trial Instructions

Although Word objected to the use of prior convictions for impeachment purposes before trial, Word did not object to the lack of a limiting instruction at trial. Accordingly, we review the failure to include the limiting instruction for plain error affecting Word's substantial rights. *See Griller*, 583 N.W.2d at 740.

Word cites *State v. Bissell*, 368 N.W.2d 281 (Minn.1985) and argues that the district court erred by failing to instruct the jury on the proper use of his prior convictions when the evidence was introduced, even though a limiting instruction was issued at the end of trial. *Bissell* urges that

limiting instructions be given both when the prior conviction is introduced into evidence and again at the end of trial. 368 N.W.2d at 283. *Bissell* also notes that the district court should issue a limiting instruction even when the defense counsel introduces the evidence. *Id.* In *Bissell*, defense counsel timely requested a limiting instruction; nonetheless, the court found the error was not prejudicial and affirmed. *Id.*

Here, unlike *Bissell*, the district court was not asked to give a limiting instruction during trial. Although the failure to give the instruction may have been plain error, the question is whether it was prejudicial. As previously noted, a limiting instruction was given to the jury at the end of the trial. Because any prejudice to Word was minimized when the district court gave an instruction at the end of the trial and because the state made little use of the evidence, on this record, we conclude that the lack of a mid-trial instruction was not prejudicial and affirm this aspect of the district court proceeding.

### V.

The fifth issue is whether the different instructions given by the district court regarding proper use of Word's previous OFP violation compared to the use of the prior controlled-substance convictions were so confusing as to require a new trial. We review jury instructions in their entirety to determine whether they fairly and adequately explain the law of the case. *State v. Flores*, 418 N.W.2d 150, 155 (Minn.1988). A defendant's failure to object to instructions before the judge instructs the jury constitutes a waiver of the right to appeal. *Cross*, 577 N.W.2d at 726. We nonetheless review the instructions if they amount to plain error affecting substantial rights or were misleading or confusing on fundamental points of law. *State*

*v. Crowsbreast,* 629 N.W.2d 433, 437 (Minn.2001). Error is prejudicial when there is a reasonable likelihood that the error would have had a significant effect on the jury's verdict. *Griller,* 583 N.W.2d at 741.

The district court stated the following regarding the proper use of evidence of prior convictions:

> In deciding the believability and weight to be given the testimony of a witness, you may consider: Evidence that the witness has been convicted of a crime. You may consider whether the kind of crime committed indicates the likelihood the witness is telling or not telling the truth. In the case of [Word], you must be especially careful to consider any previous conviction only as it may affect the weight of [Word]'s testimony. You must not consider any previous conviction as evidence of guilt of the offense for which [Word] is on trial.

By contrast, with respect to Word's prior OFP violation, the district court stated that

> [t]he State has introduced evidence of [Word's OFP violation] on October 31, 2005.... As I told you at the time this evidence was offered, it was admitted for the limited purpose of assisting you in determining whether [Word] committed those acts with which [he] is charged in the complaint.... You are not to convict [Word] on the basis of any occurrence on October 31, 2005.... To do so might result in unjust, double punishment.

The above instructions clearly delineate the difference between the use of prior convictions for impeachment versus the substantive use of the previous OFP conviction. Because the instructions are not inadequate, confusing, or unfair, we find no error.

## VI.

Word's final contention is that the cumulative effect of the district court's errors was so prejudicial that it impaired his right to a fair trial. We have recognized that the admission of the far-reaching relationship evidence may have been plain error and that the lack of any specific jury instructions regarding that evidence and the lack of mid-trial instructions regarding impeachment evidence were clear error. Individually, we have concluded these errors did not have a significant effect on the jury verdict and were not prejudicial. We have also concluded that evidence of Word's guilt was strong and that errors did not compromise the fairness or ultimate integrity of the judicial proceeding. Based on the instructions that were given, the strength of the evidence, and the general care with which the district court conducted these proceedings, we conclude the cumulative effect of errors does not require a new trial.

## DECISION

We conclude that the district court did not abuse its discretion by denying Word's motion in limine which allowed limited relationship evidence to be introduced at trial pursuant to Minn.Stat. § 634.20. We further conclude that, notwithstanding defense counsel's motion in limine, defense counsel should have renewed a trial objection to any excessive, unfair, or prejudicial relationship evidence that violated the district court's limited pretrial order in order to preserve claims of error on appeal. We also conclude that, even if the failure to exclude specific relationship evidence was plain error and although the district court's admission of relationship evidence without cautionary instructions was plain error, because Word fails to show that admission of the relationship evidence and the lack of accompanying cautionary in-

structions affected his substantial rights or deprived him of a fair trial, we affirm this aspect of the district court's decision. Although a mid-trial instruction should have been given on evidence of prior convictions, we conclude that the admission of those prior convictions for impeachment purposes and the lack of mid-trial jury instructions did not represent reversible error. Finally, we have concluded that the district court did not issue confusing and misleading instructions and that the cumulative effect of plain errors does not require a new trial.

**Affirmed.**